People v. Price.

*Murphy & Burnett,* for Respondents, upon the law of fences and trespasses by animals, cited 6 Penn. 472 ; *N. Y. & Erie R. R. Co.* v. *Skinner,* 19 Pa. 303 ; 16 Ill. 201 ; *Waters* v. *Moss,* 12 Cal. 535 ; 4 Yerger, 36 ; Wood's Dig. 458, art. 2482.

---

## THE PEOPLE v. PRICE.

AFFIDAVITS on motion for new trial in a criminal case, not embodied or referred to in any statement or bill of exceptions, are no part of the record.

APPEAL from the Sixth District.

Indictment for murder.   On the trial, the prosecution introduced two witnesses, Murray and Mrs. Favor.   It was shown that defendant and Poole, the deceased, had been living and working together on a ranch belonging to one Favor ; that a week before the killing defendant had been discharged, though sleeping at night in a cabin on the ranch ; that on the fourteenth of August, Mrs. Favor, the only witness to the killing, was standing in her door, and saw Poole go out.   He requested defendant to leave the ranch, when they

had some words she did not hear—"not very angry, not very pleasant;" Poole turned and walked towards the house, and defendant drew a pistol and began firing at him, discharging five balls; Poole ran towards the house, and fell dead; defendant left at once. Witness did not hear Poole use threats; she heard sounds, but not words; defendant kept advancing as he fired; Poole kept his hands by his side; witness saw no motions. Fifteen or twenty minutes before the firing, defendant came towards the house, and told Mrs. F. he was going to leave the ranch, and requested her to get him some articles he had there. Subsequently, witness became aware that defendant had left a pair of boots in the house, though at the time of the killing she was not aware of it.

Verdict, guilty of murder in the first degree.

Defendant moved for a new trial upon affidavits—1st, by Murray, the Coroner, to the effect that on the examination of the body of Poole before a jury, some six or twelve hours after the killing, he found in his bosom a butcher knife, and that he did not tell defendant or his counsel of this fact until after the trial; 2d, by one of the jurymen at the Coroner's inquest, that he also then saw the butcher knife, as stated by Murray; that it was between the over and undershirt, and had the appearance of being recently ground; 3d, by Russel, in substance, that he had known defendant since the spring of 1858, having employed him; that at times his conduct was very irregular; he would sometimes bite his nails, his features become distorted, body and limbs contract and twitch, his eyes roll and stare, and he weeping bitterly, and talking about his mother; that these things, with his general conduct and manner, convinced affiant that defendant was insane; that he had been working about in affiant's neighborhood a portion of the time from 1858 to June, 1860, and had the reputation of a peaceable, harmless, quiet man; never knew him to be intoxicated or in quarrels; and that affiant did not state these facts to defendant or his counsel until after trial—not knowing until since the trial that he was indicted; 4th, by Green, that he was a member of the Board of Supervisors of this county; that witnesses favorable to defendant were ordered away by the people; that in one case a witness, either L. Dow or Robert Deering, complained that he had not money enough to leave,

whereupon thirty-five dollars were raised by those present, and paid him to leave; that the testimony of said witness, as affiant is informed and believes, is highly important for defendant; and that he did not communicate these facts to defendant or his counsel until after trial; 5th, by Evans, that he knew defendant and deceased; that on the day of the killing defendant came to affiant's house, and urged him to go to the house of Mr. Favor to procure a pair of boots for defendant; that, upon affiant's declining, defendant told him he was afraid to go himself, on account of a supposed attack upon him by Poole; that defendant then concluded to go himself, and started; that soon after affiant heard pistols or guns fired in the vicinity of Favor's house, and on going there found Poole dead; that Poole was a quick, high-tempered man, violent in his manner and prone to quarreling and fighting; that affiant knows Robert Deering, and that the pistol fired at Poole belonged to Deering; that before the firing Deering advised defendant to leave, as Poole was a high-tempered man; that a difficulty had previously taken place between defendant and Poole, or between Mrs. Favor and defendant; and that he had not stated these facts to defendant or counsel until since the trial; 6th, by Sarah Miller, that she lives in Sacramento, and about October 1st, 1860, she had a conversation with William Piles, in which Piles said he was present at the killing of Poole, and that Poole told defendant he would give him an hour to leave the ranch; that defendant walked away about three hundred yards, and Poole followed him, calling him a nervous, cowardly son of a b——h; that Poole told defendant a short time previous to this, on the same occasion, that if he had had ammunition he would have killed him two hours ago; that affiant is informed and believes that Piles lives in Sacramento county, and owns a ranch eight miles from this city; that he was in said city December 7th, 1860, and that affiant thinks and believes he was bribed not to appear at the trial of defendant; and that affiant has never until now disclosed these facts to defendant's counsel; 7th, by defendant's attorneys, that he had no means to pay for his defense, and that they subpœnaed all the witnesses he named; that since the trial they had discovered new evidence, which would have mitigated the offense and reduced the charge; that they have

People *v.* Price.

endeavored to procure the affidavits of William Piles and Robert Deering, but have been unable to ascertain their whereabouts, and are informed and believe they are residents of this State ; and that the facts disclosed in the preceding and following affidavits have been disclosed to them since the trial; 8th, by Studeras, that he was at Favor's house while the body of Poole was lying there, and heard Robert Deering say that, on the morning of the day of the killing, and a short time before it took place, Poole said to defendant: " God d—n you; if the shot-gun had been loaded, I would have killed you before now;" that, to affiant's best knowledge, Deering is now at Grass Valley; that at the time of the killing a large number of persons were near, and threatened harm against any one who should appear to testify for defendant; and that he has communicated these facts to defendant and his counsel since the trial, and not before.

*M. C. Tilden,* for Appellant.

*Thos. H. Williams, Attorney General,* for Respondent.

FIELD, C. J. delivered the opinion of the Court—BALDWIN, J. concurring.

The defendant was convicted of the crime of murder in the first degree, and his motion for a new trial was denied. From the order of denial the appeal is taken.

The evidence as set forth in the transcript fully sustains the verdict of the jury, and the affidavits disclose no facts which would have justified its disturbance by the Court. But were this otherwise, we could not look into the affidavits; they are mere loose papers, not embodied or referred to in any statement or bill of exceptions, and thus want the authentication essential to constitute any portion of the record.

The judgment must be affirmed, and the Court below directed to designate a day for the execution of its sentence; and it is so ordered.